IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CR-40088-JPG |
| | ) | |
| JAMES A. PATTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant James A. Patton's ("Defendant" or "Patton") Supplemental Motion for a New Trial (Doc. 88). The Government has responded (Doc. 92). Patton has filed a reply (Doc. 93). On April 19, 2022, a jury found Patton guilty of Attempted Enticement of a Minor in violation of 18 U.S.C. § 2422(b) in a two-day trial. On August 31, 2022, the Court allowed Patton to file a supplemental motion for a new trial based on the allegation of constitutionally ineffective assistance of counsel. (Doc. 87). Patton did so. The Court now addresses the motion.

### I.     Background

On April 19, 2022, a jury found Patton guilty of Attempted Enticement of a Minor in violation of 18 U.S.C. § 2422(b) in a two-day trial. The jury convicted Patton under § 2422(b), which makes it a crime to use interstate commerce to attempt or to knowingly persuade, induce, entice, or coerce any individual under the age of eighteen to engage in prostitution or any sexual activity for which any individual can be charged with a criminal offense. 18 U.S.C. § 2422(b). This case involves a Federal Bureau of Investigation ("FBI") sting on a dating site called MeetMe. An undercover agent with the FBI set up an account for "Hailey" and listed her as a female who was 18 years of age. The agent later revealed that "Hailey" was 15 years of age.

Patton initiated contact with the "Hailey" profile. Patton and the profile engaged in a sexually-charged colloquy. Patton was arrested in Herrin, Illinois and given a post-*Miranda* interview where he stated the following[1]:

> Defendant: I was walking home, I wasn't going to Casey's. I wasn't going to meet her. I was going to waste her time. If she was actually going to come all the way to Herrin…found a ride all the way to Herrin, then, you know, I was just going to waste her time. I figured it was somebody trying to set me up again, just like on 'skip the games' app. So, I just straight up wasted her time, just like I was wasting them people's time on skipped the games."
>
> …
>
> Agent: You had no intention on meeting her, yet you were there when she showed up.
> Patton: Where?
> Agent: In Herrin, where the cops picked you up.
> Patton: I was at Kroger getting trash bags, like I…
> Agent: like you told her you were going to be.
> Patton: I…know…when she was messaging me, I was at Kroger, right now. And then, I was like….tell you what, I'll meet you at Casey's.
> Agent: Okay, so where did the cops pick you up at?
> Patton: On my way home.
> Agent: At?
> Patton: On the side of Kroger, walking down…uh…Clark trial, toward my house.
> Agent: So how would they have known where you were, had you not been cooperative with the conversation? If you were just on your way home, blowing her off, as you say, they would have never found you.
> Patton: Okay. I told her the truth, that I was at Kroger. But I didn't have an intention of meeting her. I told her I'd meet her at Casey's.
> Agent: Why don't you start telling me the truth?
> Patton: Okay. That's why I told her I was going to meet her at Casey's. Was I walking towards Casey's? No. I was not. I was walking home. So, I was going to have her show up at Casey's, and not even fucking show up.

FBI agents and Patton's wife, Devona, testified at the trial. Devona testified that the night Patton was arrested, she requested that Patton get trash bags from Kroger. Upon the conclusion of hearing the evidence, trial defense counsel gave closing arguments. Counsel did not mention

---

[1] The recorded interview was played for the jury as Government's Exhibit 15. No transcript of the interview was provided to the jury but the recording device was available to the jury to listen during deliberations.

to the jury during closing arguments that Patton was walking toward home with trash bags. The jury found Patton guilty of the crime of attempted enticement of a minor.

After trial, Patton, writing *pro se*, asked the Court twice to appoint new counsel alleging that trial counsel provided constitutionally deficient representation. *See* Docs. 71 and 73. The Court construed these motions as requests for a new trial on the basis of constitutionally ineffective assistance of counsel.[2] The Court allowed additional time for newly appointed defense counsel Justin Kuehn to file a supplemental motion for a new trial based on trial counsel's failure to highlight whether or not he had trash bags when he was arrested and interviewed by agents. (Doc. 87) ("In particular, the Court is concerned regarding the failure of trial counsel to highlight whether Patton possessed trash bags when he was arrested, a fact important to his defense."). *Id*. This defense was laid out in his opening statement but abandoned for the rest of the trial. Patton has remained consistent in his theory from his interview and through trial.

## II.   Analysis

A court may vacate a judgment and grant a defendant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). The decision to grant a new trial is within the Court's discretion. *See United States v. Ervin*, 540 F.3d 623, 630 (7th Cir. 2008). In deciding whether to grant a new trial, the Court "may weigh evidence, evaluate credibility, and grant the motion if 'the substantial rights of the defendant have been jeopardized.'" *United States v. Eberhart*, 388 F.3d 1043, 1052 (7th Cir. 2004) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *reversed on other grounds*, 546 U.S. 12 (2005). Granting a new trial in the "interest of

---

[2] *United States v. Villalpando*, 259 F.3d 934, 938 (8th Cir. 2001) ("while we recognized the strict construction generally given to Rule 33's jurisdictional time limit, we found that applying such rigidity in that instance would merely subordinate the defendant's right to a fair trial while effecting no meaningful rule-based purpose.").

justice is reserved for only the most extreme cases,' and we 'approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury.*" United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021), cert. denied, 212 L. Ed. 2d 17, 142 S. Ct. 1127 (2022) (internal citations omitted). Patton requests a new trial based on violation of his Sixth Amendment right to effective assistance of counsel.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [his] defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first prong, Patton must first "show that counsel provided constitutionally deficient performance, meaning counsel made errors so serious he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020) (internal quotations omitted). In evaluating such claims, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. To satisfy the second prong, Patton also must "show that this deficient performance prejudiced his defense—meaning there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.' " *Winfield*, 956 F.3d at 451 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

To prove the attempt of enticement of a minor under 18 U.S.C. § 2422(b), the prosecution must show that Patton (1) intended to complete the crime; (2) and had taken a "substantial step" toward its completion. *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008). To prove § 2242 attempt, "the government's burden was to prove beyond a reasonable doubt that he intended to persuade, induce, or entice someone whom he believed was a minor to engage in sexual activity – not that he intended to engage in sexual activity." *United States v. Berg*, 640 F.3d 239, 251 (7th Cir. 2011). However, as the Seventh Circuit recognizes, a defendant's willingness to engage in sexual conduct remains relevant to a defendant's mental state as it relates to efforts at acquiring assent: "the likelihood that a defendant would act on an expressed intent to have sex with someone may be probative of whether or not he intended to persuade, induce, or entice that person to engage in sex with him." *Id.*

The parties differ as to whether or not the trash bags were relevant to proving intent. The Court spends some time here to discuss its relevancy, which Patton puts aptly. The likelihood of whether a defendant would act on an expressed desire is *precisely* the reason the Government routinely introduces evidence defendants bring to the rendezvous point to demonstrate an intent to engage in sex, such as candy, alcohol, and lubricant. The Government routinely relies on such evidence to convict defendants, and here the Court believes such evidence could be utilized to show a lack of intent to persuade a minor to assent. *See* Doc. 93 at 2. Here, Patton's claims he believed this to be a ruse are important; it indicates his intent during the discussions was to waste the profile's time, and not to achieve sexual consent.

In short, the trash bags Patton was carrying make it less likely Patton was planning on

meeting the undercover profile, Halle. If Patton did not plan to meet Halle, it makes it less likely he anticipated having sex with her. If Patton did not anticipate having sex with Halle, it makes it less likely he intended to persuade, induce, or entice her to have sex. If Patton had trash bags with him when he was arrested walking away from Kroger and in the opposite direction from Casey's, it would make it more likely that he was, indeed, on an errand for his wife, had no intention of meeting the alleged minor, and had not taken a substantial step.  If he did not have trash bags, it would make it more likely that he was out walking for other reasons. The Court finds the trash bags an important "fact of consequence" in this case. (Doc. 93 at 3).

Patton notes that his statements in the colloquy with the FBI agents above is his defense "in a nutshell." (Doc. 88 at 5). Specifically, Patton argues the fact he was not in possession with items to facilitate sexual activity such as condoms or lubricant, which strongly corroborates his account on why he left his house and was walking around in Herrin. *Id*. Patton states, "this easily provable detail did not make its way into evidence. Trial counsel called Mr. Patton's spouse to testify that she sent him to run the errand, but then, counsel took no steps to prove that Mr. Patton actually followed through." *Id*. "The trash bags should have been a center-point of the defense, but instead, were completely neglected." *Id*. at 6. In fact, after opening statements trial counsel never mentioned trash bags again.

The Government's central argument is that "Defendant's intentions to meet with, much less have sex with the purported minor is irrelevant." (Doc. 92 at 4). The Government argues that "Defendant's criminal conduct, or his attempt at his criminal conduct, was completed long before FBI agents approached him." (Doc. 92 at 4). Essentially, the Government believes the completion of the crime Patton was found guilty of occurred during the colloquy between the FBI agent and Patton. The Court disagrees. The Court believes that the trash bags were an

incredibly relevant piece of evidence in showing his lack of intent to persuade or entice.

Speaking to substantial step, the term can be an elusive concept, but has been described as more than mere preparation, but less than the last act necessary before actual commission of the crime. *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir.1985). A substantial step occurs when a person's actions make it reasonably clear that had he not been interrupted or made a mistake, he would have completed the crime. *Gladish*, 536 F.3d at 648.

Looking at the "substantial step" inquiry, the Court looks to the case of *United States v. Gladish* from the Seventh Circuit, which provides contours of the "substantial step" inquiry. In *Gladish*, the defendant was caught in an Internet sting operation much like the one that ensnared Patton. Gladish encountered a government agent impersonating a 14-year-old girl called "Abagail" in an Internet chat room. The exchanges were graphic, and Gladish went so far as to send her a video of himself masturbating. "Abagail" agreed to have sex with Gladish, but the two never settled on anything more specific. Gladish lived in the southern part of Indiana, and "Abagail" purported to live in the northern part of the state. The two discussed a meeting, but they made no arrangements for one. The Seventh Circuit stated:

> Travel is not a *sine qua non* of finding a substantial step in a section 2422(b) case.... The substantial step can be making arrangements for meeting the girl, as by agreeing on a time and place for the meeting.... It can be taking other preparatory steps, such as making a hotel reservation, purchasing a gift, or buying a bus or train ticket, especially one that is nonrefundable.

*United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008) (internal citations omitted and cleaned up). The Seventh Circuit in *Gladish* found that Gladish's factual circumstances did not add up to the kind of "substantial step" needed for a criminal conviction based on attempt. The Seventh Circuit contrasted the "usual prosecution," in which "the defendant after obtaining the pretend girl's consent goes to meet her and is arrested upon arrival," 536 F.3d at 648, with a case

that involves only explicit sex talk (coupled with the video), *id*. at 649–50. In the usual case the Seventh Circuit has said, "there is a sufficient likelihood that [the defendant] would have completed [the crime] to allow a jury to deem the visit to meet the pretend girl a substantial step toward completion." *Id*. at 649.

In *Gladish*, the Seventh Circuit was concerned with criminalizing obscene speech. Treating speech (even obscene speech) as the "substantial step" would abolish any requirement of a substantial step. *Gladish*, 536 F.3d at 650. "The requirement of proving a substantial step serves to distinguish people who pose real threats from those who are all hot air[.]" *Id*. The appellate court in *Gladish* found that the defendant's record only showed "hot air." The Seventh Circuit summarized why it did not find the Government proved a substantial step:

> [D]efendant in the present case said to a stranger whom he thought a young girl things like "ill suck your titties" and "ill kiss your inner thighs" and "ill let ya suck me and learn about how to do that," while not "harmless banter," did not indicate that he would travel to northern Indiana to do these things to her in person; nor did he invite her to meet him in southern Indiana or elsewhere. His talk and his sending her a video of himself masturbating (the basis of his unchallenged conviction for violating 18 U.S.C. § 1470) are equally consistent with his having intended to obtain sexual satisfaction vicariously. There is no indication that he has ever had sex with an underage girl. Indeed, since she furnished no proof of her age, he could not have been sure and may indeed have doubted that she was a girl, or even a woman. He may have thought (this is common in Internet relationships) that they were both enacting a fantasy.

*Id*. at 650. While some of the factual circumstances in this case are distinguishable to *Gladish*, the Court finds that the same concerns the Seventh Circuit had in that case applicable to this case. *Cf United States v. Davey*, 550 F.3d 653, 658 (7th Cir. 2008) (finding defendant squarely fit in *Gladish* 'substantial step' typical pattern where defendant "made arrangements for meeting 'blonddt,' and he drove to the rendezvous point"). This Court does not wish to criminalize obscene speech and criminalize thoughts. The Court disagrees with the Government and believes that the trash bags, which were at the heart of Patton's defense, is the most relevant to this case.

Just as the Seventh Circuit was concerned with differentiating people who are *real* threats versus "hot air," evidence that this Patton may be "hot air" is the most relevant. Failure to produce or highlight evidence that Patton may have been "hot air" concerns this Court.

At this juncture, however, the Court is not concerned with what the Government needed to prove. It is now Patton's burden to show both prongs under *Strickland*. The Court does so at this point. The first question the Court asks is whether trial counsel's performance fell below objective standards for reasonably effective representation. The Court answers yes. While trial counsel mentioned that Patton was found with trash bags in his opening statement, it was not highlighted, not cross-examined about during the cross examination of the agent who arrested Patton, and not mentioned in the closing statement. In short, it did not make its way into evidence in the defense case. Patton argues that "[e]stablishing Mr. Patton's actual possession of trash bags at the time of his arrest would have gone a long way towards answering this question [what his true intent was] in Mr. Patton's favor, and in turn, creating reasonable doubt regarding his intent." (Doc. 88 at 5). The Court agrees.

*Strickland* directs courts to have a highly deferential view on trial counsel. Specifically, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. 668, 689, 104 S. Ct. at 2065. Even providing a highly deferential view of trial counsel's strategy, the Court cannot find a reasonable trial strategy for a failure to highlight Patton's actual possession of trash bags at his arrest, which this Court believes was the most relevant evidence.

The Government argues that even if trial counsel brought up the existence of trash bags, they were still irrelevant evidence. (Doc. 92 at 7). For the reasons that the Court believes the

trash bags are relevant mentioned above, the Court disagrees. Even indulging the strong presumption our law provides that counsel's conduct fell within the reasonable professional assistance, the Court does not find trial counsel's failure as reasonable. Trial counsel clearly meant for this to be Patton's sole defense and fell constitutionally short of bringing the most provable detail central to that defense to the jury's attention.

Next, the Court asks whether there was prejudice. Patton must show that "but for" counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Patton first notes that this case is very different than the "typical enticement cases that flooded this district in recent years." (Doc. 88 at 6). Anecdotally, the Court agrees with that assertion. As Patton points out, many defendants in other prosecutions are part of sting operations, many whom travel to neighboring cities, voluntarily arrive at pre-arranged locations, and carry items discussed during the chats such as alcohol, condoms, or candy. "Substantial steps are unquestionably taken; intent is beyond debate." *Id*. In those cases, many defendants are left to argue entrapment and inducement by law enforcement because intent and substantial steps are inarguable. Patton states that his defense did not center around being induced by the agents – it was that he never intended to meet the fictitious minor – and had his defense been properly established, the outcome would have been different. (Doc. 88 at 6-7).

The Government argues that there was no prejudice. Essentially, the Government reiterates that trash bags were irrelevant, and the jury was properly instructed "government was not required to prove that Patton actually intended to engage in illegal sexual activity with the minor." (Doc. 92 at 7).

The Court believes that the jury was properly instructed. The jury was instructed that "[t]he substantial step must be an act that strongly corroborates that the defendant intended to

carry out the crime." (Doc. 64, p. 14). However, Patton's entire theory of the case was the conversation was such that he did not believe the purported victim, he was "messing" with her, and was concerned he was being set up as he had been before through other apps. Just as *Gladish* believed that criminalizing someone by their words is concerning because defendant may have thought the conversation was a "fantasy," here, trial counsel should have presented and highlighted evidence that could have proved his theory he was being set up. His counsel missed the constitutional mark. Given that this was Patton's main defense, failure to highlight evidence that could prove his theory of the case by trial counsel prejudiced Patton. The Court finds had trial counsel properly made the existence of trash bags the center point of his defense, highlighted it to the jury, made it into evidence, and cross-examined witnesses on its existence, there is a reasonable probability that he would not have been found guilty of the offense of attempted enticement of a minor.

Every defendant must be given an adequate defense. Patton in this case was provided constitutionally deficient representation. For these reasons, the Court GRANTS Patton's Motion for a New Trial (Doc. 88).


**IT IS SO ORDERED.**
**Dated: November 18, 2022**

/s/  J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**